IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRIGATE LIMITED,<br><br>        Plaintiff,<br><br>  v.<br><br>CECILIA L. DAMIA,<br><br>        Defendant.<br>_____/ | No. C 06-04734 CRB<br><br>**ORDER** |

Now pending before the Court is Plaintiff's motion to dismiss Defendant's second counterclaim. For the reasons set forth below, that motion is DENIED.

**BACKGROUND**

In 1991, Cecilia Damia and her husband, Emil Damia, who is now deceased, established two trusts: the Cecilia L. Damia Family Trust and the Emil Damia Family Trust (collectively, the "Damia Family Trusts"). Into these trusts they placed certain assets, including their interest in a number of convalescent hospitals located in Northern California. Under the terms of the agreements establishing the trusts (the "Trust Agreements"), they relinquished all rights to these assets and gave them to a trustee for management. The current trustee of the Damia Family Trusts is an Isle of Man company called Frigate Limited. Significantly, the Trust Agreements contain a provision requiring all disputes arising under them to be governed by the law of the Isle of Man, an island jurisdiction located off the coast of England. These Trust Agreements also contain a forum selection clause, which provides

that any lawsuits arising under them shall be submitted to the jurisdiction of the High Court of the Isle of Man.

Following the establishment of the Damia Family Trusts, Cecilia Damia ("Damia") entered into several contractual agreements with the trustee, whereby the trustee effectively gave to her large sums of money out of the assets of the Damia Family Trusts. This case involves five such transactions:

- First, at the time that the trusts were established, the trustee and Damia signed a Private Annuity Agreement, under which the trustee agreed to provide Damia with a monthly annuity of approximately $19,000.

- Second, in April of 2003, the trustee provided Damia with a loan of $630,000. The parties executed a promissory note requiring all disputes arising in connection with the loan to be resolved in California courts. According to the trustee, Damia has failed to repay this loan.

- Third, at some point in 1999, the trustee provided Damia with another loan so that she could purchase and maintain certain property in Costa Rica. According to the trustee, Damia has never provided any documentation of the putative purchase of this property, and there remains an unpaid balance of approximately $250,000 on this loan.

- Fourth, in April of 2004, the trustee provided Damia with an additional loan of $50,000. According to the trustee, Damia has refused to sign a promissory note on this loan and has failed to repay any portion of it.

- Fifth, in June of 2004, the trustee and Damia entered into a so-called "Service Agreement." Under the terms of the Service Agreement, Damia agreed to provide certain management services in connection with the convalescent hospitals owned by the trust. In particular, she agreed to provide quarterly accountings and to manage certain bank accounts pertaining to these hospitals. In exchange, the trustee agreed to provide Damia with a monthly stipend of $5,000.

The trustee filed suit in August of 2006, alleging that Damia had failed to live up to her end of the last four of bargains. Specifically, the trustee asserted causes of action for her failure to comply with their agreement as to the $630,000 loan (Claims 1 and 5), the Coast Rica loans (Counts 2 and 6), the $50,000 loan (Claims 3 and 7), and the Service Agreement (Counts 4 and 8).

Defendant counterclaimed. She asserts three causes of action: (1) that the trustee breached the Service Agreement, (2) that the trustee breached its fiduciary duty under the Trust Agreements; and (3) that the trustee breached the Private Annuity Agreement by discontinuing her monthly annuity of $19,000. Moreover, as an affirmative defense to the

1  trustee's claims, Damia asserts that she is excused from performance under these various
2  contracts because the trustee breached its obligations under the Trust Agreements.
3       Now pending before the Court is Defendant's motion to dismiss Plaintiff's second
4  counterclaim.  Defendant argues that this particular counterclaim must be dismissed because
5  it arises under the Trust Agreements, which require the submission of any disputes arising
6  under them to the High Court of the Isle of Man.  In other words, Defendant contends that
7  the counterclaim relating to the breach of its fiduciary duty cannot be heard in this Court in
8  connection with this lawsuit, and must be heard if at all in the Isle of Man, because it arises
9  under the Trust Agreements, and not under the distinct contractual agreements that form the
10 basis for Plaintiff's original complaint.

## DISCUSSION

Under Ninth Circuit law, a motion to dismiss based on a forum selection clause is treated as a challenge to venue under Rule 12(b)(3), and the district court therefore may consider facts and pleadings outside the scope of the complaint.  Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996).  Generally, courts will enforce a forum selection clause, even one that requires submission of the dispute to a foreign court, unless the party challenging the clause can clearly show that its enforcement would be "unreasonable under the circumstances."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).  Consistent with the "presumption in favor of enforcing [a] forum selection clause," TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc., 915 F.2d 1351, 1355 (9th Cir. 1990), the Ninth Circuit has held that a forum selection clause must be enforced unless the party opposing it clearly shows (1) that the clause "was the result of fraud, undue influence, or overweening bargaining power," (2) that forum identified in the clause is "so 'gravely difficult and inconvenient' that the complaining party will 'for all practical purposes be deprived of its day in court,'" or (3) that enforcement of the clause would "contravene a strong public policy of the forum in which the suit is brought." Argueta, 87 F.3d at 325 (quoting Bremen, 407 U.S. at 18, and citing Carnival Cruise Lines v. Shute, 499 U.S. 585, 591 (1991)).

3

1    Here, the Court concludes that enforcement of the forum selection clause in the Trust
2    Agreements would be "unreasonable under the circumstances" of this peculiar case.
3    Bremen, 407 U.S. at 10.  If the Court dismisses Damia's counterclaim, she will be forced to
4    litigate the case simultaneously in the Isle of Man.  Moreover, because Damia asserts the
5    basis for the counterclaim as an affirmative defense against the trustee's claims, this Court
6    may address and decide many of the issues presented in the counterclaim.  Under these
7    circumstances, the instant proceedings may well have preclusive effect on any subsequent
8    proceedings in the Isle of Man, and Damia may be effectively "deprived of [her] day in
9    court" as to that counterclaim.  See Argueta, 87 F.3d at 325.

10   For similar reasons, the Court also finds that the enforcement of the forum selection
11   clause in the Trust Agreements would be contrary to sound judicial policy.  A plethora of
12   legal rules and doctrines are designed to promote the efficient resolution of controversies.
13   See, e.g., Fed. R. Civ. P. 18 (permitting the joinder of related claims and remedies); Fed. R.
14   Civ. P. 19 (requiring the joinder of persons needed for just adjudication of a controversy);
15   Fed. R. Civ. P. 20 (permitting joinder); Fed. R. Civ. P. 22 (allowing interpleader for
16   interested parties); 28 U.S.C. § 1291 (requiring a "final order" by the district court so as to
17   avoid piecemeal or unnecessary litigation of appeals).  Compelling Damia to litigate the same
18   issues in a different jurisdiction halfway around the world, when this Court is adjudicating
19   those very same issues at the trustee's own behest, is needlessly inconvenient and
20   burdensome; requiring such duplicitous litigation is plainly contrary to the policy of the
21   federal judiciary of promoting the consistent and complete adjudication of disputes.  To the
22   extent that it has been deprived of the benefit of the forum selection clause in the Trust
23   Agreements, the trustee has only itself to blame--by entering into contracts with the settlor,
24   even though she may have been acting in a distinct and unrelated role, the trustee itself
25   created the specter that its fiduciary duty under the Trust Agreements would be invoked in a
26   dispute.  The trustee cannot enter into multiple agreements, all of which pertain to the same
27   set of assets and bind the same parties (albeit perhaps acting in different roles), and then
28   complain that they contain mutually incompatible forum selection clauses.  Cf.Adam v.

United States District Court
For the Northern District of California

4

1  Saenger, 303 U.S. 59, 67-68 (1938) ("The plaintiff having, by his voluntary act in demanding
2  justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing
3  arbitrary or unreasonable in treating him as being there for all purposes for which justice to
4  the defendant requires his presence. ").  The trustee has identified no case, and this Court is
5  aware of none, in which a plaintiff first filed suit and then successfully invoked a forum
6  selection clause to exclude counterclaims as to the very same subject matter.

7        Of course, the Court makes no determination at this point whether the Trust
8  Agreements and the other contracts are so closely intertwined or related that a breach of one
9  might excuse performance under another.  The point here is merely that the agreements
10 between the trustee and Damia (whether acting as settlor or as third-party) involve
11 overlapping facts and require a resolution of the parties' respective rights as to the very same
12 property; under these circumstances, it would be unreasonable to require the extraction and
13 exportation one set of issues for independent resolution by a foreign court.  For this reason,
14 the Court exercises its discretion not to enforce the forum selection clause, see Transamerica
15 Airlines, 915 F.2d at 1353, and Plaintiff's motion to dismiss Defendant's second
16 counterclaim is hereby DENIED.

17       **IT IS SO ORDERED.**

20 Dated: January 12, 2007      CHARLES R. BREYER
                                                 UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California